Good morning, Your Honors. May it please the Court, my name is Devin McRae, and I represent the petitioner Joe Leslie Desiree. Before any discussion about the issues within relief from removal, cancellation, asylum, withholding, or cat relief, this case turns on removability in the first instance. My client was charged as removable only on one basis, that he had been convicted of the aggravated felony of trafficking in a controlled substance. But the State Statute of Conviction, California Health and Safety Code Section 11352A, is overbroad, as this circuit has repeatedly recognized. And under the modified categorical approach, the record of conviction does not establish at all, much less unequivocally and clearly, what facts my client admitted in his plea deal with the State of California. The record only shows the fact of conviction for some violation of the statute, but it does not show and cannot show the specific facts necessary to show that the nature of the violation fits within the narrower conduct prescribed by the Controlled Substances Act. Actually, technically, grammatically, it shows that he was charged with everything. Well, the government has argued that the complaint is only pleaded in the conjunctive, which would be along those lines. But Omison Becerra tells us a complaint that's pleaded in this way, with use of the virgules in the beginning, is actually a disjunctive and a conjunctive complaint. So the charge is and all the way through, isn't it? And then the judgment of conviction shows the virgule with transport and sale. That is correct, Your Honor, except for the fact that in the complaint itself, it begins with identifying the crime, and with use of the virgules, Omison Becerra tells us that that actually leads to the inference that it's also pleaded in the disjunctive. Okay. And this is an unusual case because the two documents that comprise the record of conviction, the Ninth Circuit has already passed upon both and said they are not sufficient to establish that the crime qualifies or show the nature of the crime fits within the narrower conduct. You've got the California abstract of judgment, which is just a clerical document that doesn't add any facts. Well, we have said that in certain circumstances, you can refer to the abstract of judgment, including in an opinion that just came out last week. I have seen opinions where the abstract was good for showing the fact of conviction of a statute, and also an opinion that where it was useful for identifying the sentence imposed. I have not seen any opinion where the nature of the offense or the abstract has been used to narrow the nature of the offense given a charge of an overbroad statute. And then you have the charging instrument here, which is for practical purposes almost identical to the charging instrument in Omison Becerra. So the government's attempts to distinguish the record of conviction here from Navidad Marcos, which is the controlling authority, is unavailing because, one, the abstracts are identical, it's plainly clear, the same verbiage is used, the font may be different, and the order of the two terms is different, but that's not meaningful. And secondly, the complaint is pled in the disjunctive and conjunctive. So the argument that the complaint's only pleaded in the conjunctive is also unavailing. And putting that aside, even if you were looking at the complaint and it was purely in the conjunctive, that would not be enough, because Navidad Marcos is pretty clear that the abstract is really not reliable to identify the nature of the offense. So what we have here is the fact that Mr. Deseret's removal was not lawful. It's unnecessary for the Court to reach the other issues in this case, but there are other issues, so I'll briefly touch upon them. The government contends that our challenges to the BIA's particularly serious crime determination, which precluded withholding, and the BIA's denial of deferral under CAP raised no questions of law. Putting this aggravated felony issue aside, we do clearly show that other errors of law were made. Morales tells us that it is an error of law for the BIA to rely on matters outside of the record of conviction in applying the frantescu factors for a particularly serious crime determination. Morales and Ornelas-Chavez tell us that the BIA erred in requiring evidence that the Haitian government would subject Mr. Deseret to torture directly as opposed to turning a blind eye when the President's son carries out his threat to kill him. Ramadan tells us that the erroneous interpretation and application of a regulation is an error of law, and that includes the failure to consider all evidence relevant to the possibility of future torture, as defined by the Code of Federal Regulations. Now, just briefly touching upon what the IJ or BIA failed to consider, well So you don't run out of your time, would you address their failure to exhaust argument? Yes. Well, there is no exhaustion problem here because the issues that we raise have been considered both thoroughly, and so an issue is exhausted when the BIA is considered the issue, and that's because the policy behind exhaustion is giving the administrative agency a chance to consider issues thoroughly and correct its own errors is served when the BIA actually addresses the issue. In addition, there is an exception to exhaustion based on events that occur after briefing to the BIA, and here we have a change in law that expressly overruled whether or not 11352a facially qualified is an aggravated felony. So Rivera-Sanchez came after? Rivera-Sanchez came after briefing to the BIA. And the government also makes an argument that because of the dismissal of the first petition for review that res judicata would apply. And we've looked at that and analyzed that fully in our briefs, but Rivera-Sanchez also came after that dismissal. So I've got about three minutes left that I'd like to reserve for rebuttal. Thank you, Your Honor. Surely, Ms. Parsons. Good morning. Good morning. Cynthia Parsons for the Attorney General. First, regarding the exhaustion argument, this Court does not have jurisdiction over these issues regarding both the aggravated felony and the particularly serious crime because of a failure to exhaust. I have a little hard time understanding that since Lomax was the law before and now Rivera-Sanchez is, and so no matter what theory of exhaustion you pursue, aren't you up a creek? No. Although Lomax was in effect at the time the BIA was reviewing this case, nothing precluded the Petitioner, even if it was considered an aggravated felony, a simple possession or something like that, from saying that the documents presented were insufficient to establish that it was an aggravated felony or they were – it didn't establish it as clear and convincing evidence. The BIA actually addressed the issue of aggravated felony. That is correct. So, I mean, it addressed it, and maybe right at the time, maybe wrong at the time, but it addressed it. And now don't we – so, right. Exactly. However, the additional argument regarding particularly serious crime, and they make a number of very specific arguments in their brief, none of which were raised before the BIA or the immigration judge, and contrary to Petitioner's argument, the BIA did not address those specific arguments. The BIA did address whether or not 212H, 212C, suspension, various other issues, but did not get to the very specific arguments that the Petitioner makes in this petition or in this brief, and that's because they weren't before it. But beyond that – I'm sorry. I thought you were going to ask a question. Beyond that, looking specifically at the aggravated felony and the timing of Rivera-Sanchez, the statutory bar – this Court lacks jurisdiction not only for failure to exhaust, but also under 1252d2 for things that either were or could have been decided in a prior judicial proceeding. While true that this Court did dismiss the petition about three weeks before Rivera-Sanchez was decided, the Court did not issue the mandate until almost five months later, and that's because on April 16, 2001, two days before Rivera-Sanchez was decided, the Petitioner filed a motion to reconsider. That motion was pending until September of 2001, when this Court denied the motion to reconsider and issued the mandate. Therefore, the case was still open and on review while – when this Court had decided Rivera-Sanchez and was open and on review for some months afterward. Sotomayor was the Rivera-Sanchez argued in the PFR? No. Not in the original PFR? Yeah. No, it was not. Well, there was not. Well, at any time during the pendency of the PFR, was Rivera-Sanchez called to the attention of the panel such that it denied the PFR with obvious reference to it? I am not a – I do not know if the Petitioner ever brought that case specifically to the panel's attention. However, clearly, the decision of Rivera-Sanchez was a fairly monumental decision, and it occurred while the panel was still considering the motion to reconsider. Therefore, had – and the prohibition is not just on what was decided, but on what could have been decided. If you look at the statutory bar, it includes issues that could have been decided. That issue clearly could have been raised by the Petitioner with a 28-J letter, a further briefing, a fax to the Court, or on the Court's own review of a – of the decision of Rivera-Sanchez. And yet neither the Court nor the Petitioner did so, and this Court dismissed the Petition and denied the motion for reconsideration and issued the mandate months after Rivera-Sanchez was decided. Therefore, the government would argue that this Court is barred from determining whether or not the immigration judge and the BIA properly applied the modified categorical approach. Okay. On the modified categorical approach, how can you distinguish Navidad-Marcos? Because it seems to me like it is essentially bang on. Actually, Navidad-Marcos is distinguishable. If you look at Navidad-Marcos, what this Court was focusing on there is a charge under a statute, and the statute with very similar language, charged, you know, that did willfully, unlawfully do this or this or this or attempt to do that or attempt to do that. In the charge, the actual indictment, Navidad-Marcos, that's exactly how it was charged. They just simply took the statutory language, plopped it into the indictment, and he was charged with doing this or that or some other thing. He was convicted of that charge. He pled guilty to that charge. And in the abstract of judgment, it had the typical sales-slash-transport. Well, what the problem is that in the abstract, the abstract of judgment was essentially identical to the one here. And we basically said you can't tell anything from that, because the fact that it just had transport-slash-sale or sales-slash-transport, it could have been just to accommodate the size of the box, rather than to indicate it was of those two things, rather than a solicitation or offer or giving it away or whatever. That's correct. That's correct. However, if you look at what was charged in the indictment in this case and what he actually pled to, we have two completely different situations. I don't know what he pled to. He pled to count one of the indictment. Count one charged him in the conjunctive, contrary to Petitioner's argument. He wants you to just look at the recitation of the indictment. Well, it charged him with everything under the sun. He was charged with sale and transport and import. And offer and whatever, giving it away. Exactly, which meant he pled guilty to all of them, because it was charged and, and, and, and. Yes. So whether or not an attempt or an offer was a crime or an aggravated felony, the sale was. And he was convicted of that because he was charged with that in addition to the other charges. And consequently, when he pled guilty to that charge, as it was drafted, he was pleading guilty to doing each and every one of those things as opposed to doing maybe this and maybe that or maybe this. It was all of them in the conjunctive. The statute itself is in the conjunctive or in the disjunctive? It is in the disjunctive. And so the indictment, unlike that in Navidad-Marcos, simply, they didn't just simply pick up the statutory language and put it in the indictment. Rather, they changed the language and changed the ors to ands. That change and his plea to that count means that he has pled to every single thing that is charged in that, that indictment. And that includes sale of rock cocaine, which clearly is a trafficking offense and clearly an aggravated felony. In addition to that, we also have the recidivist exception under Lopez. This conviction document and the indictment that the charge that he pled to includes two priors. And under the California Penal Code, they don't charge those priors unless he is actually convicted of them. And if you look at Administrative Record 1070, you will see that the charge includes not only that, but also includes some enhancement for the priors. And consequently, that record of conviction shows that he not only is convicted of this, but that he also, because that's included in Count 1 of this case, that he also is admitting he was convicted of those other two possessions. And in addition to that, the record before the BIA included the record of conviction, including the indictment and the abstract, for the 1991 conviction. Therefore, under the recidivist exception under Lopez, footnote 6, that is a trafficking conviction, and therefore, he is an aggravated felony felon. And in addition to that, we also have the issue that it's rock cocaine, which is cocaine based, which is also something that every court, including the Supreme Court and this Court, have recognized as being – in fact, this Court just recently, I think in – I'm going to mess up the name here – Vale Montaldo decided that even simple possession of cocaine based or rock cocaine is categorically an aggravated felony. So any way you look at it, the record of conviction was more than sufficient to determine that a petitioner was convicted of an aggravated felony. And because he was convicted of an aggravated felony, the criminal alien bar does apply. For example, this Court does not have jurisdiction now over any of the discretionary issues or any issue that is not an issue of law or a colorable constitutional issue, because this petitioner was convicted of an aggravated felony. And therefore, the only thing this Court can consider are colorable constitutional issues or questions of law which were not previously decided or could have been exhausted. That virtually eliminates the entire petition, because he didn't exhaust any of his specific claims that he now makes in his brief regarding particularly serious crime, and this Court is precluded from reviewing the aggravated felony issue because it could have decided that in a prior judicial proceeding, plus the fact that, as we just discussed, it is an aggravated felony. I do notice that I am out of time. So unless the Court has further questions. Thank you for your argument, Mr. McRae. It would be helpful to me to hear your response to two points that Ms. Parsons argued, the first being the pendency of the PFR after Rivera-Sanchez, and the second being the difference that she points to in the charging document here and in Navidad. Okay. Thank you. Well, as far as the pending petition for review, first of all, there are several doctrines and a statute we need to look at, because res judicata is comprised of both claim preclusion and issue preclusion. We also have to look at law of the case. And then we have to look at 1252d2, which precludes a court from reviewing an order where a previous court has already determined the validity of the order. And this Court did not determine the validity of the order during that first petition for review. It addressed one issue within that overall subject, was whether this was a valid removal order. Well, I think the argument is that because Rivera-Sanchez was on the books before we issued the order denying the PFR, we necessarily, implicitly, took it into account and or, if we did not, and our determination is solely based upon, what is it, Lomaz, then it could have been brought to our attention, but was not. Well, the petition for review was dismissed a month prior to the change in law to Rivera-Sanchez. My client did file a motion for reconsideration, but he filed that motion for reconsideration two days prior to Rivera-Sanchez. So at the time my client filed his motion for reconsideration, Rivera-Sanchez hadn't been filed yet. What about the time that it was ruled on? This person says it was several months later. It was ruled on June 7, 2001, but there was a pretty clear mandate from this Court to my client that the docket is closed and it's not going to consider any further type of filing. And the language was, no motions for reconsideration, rehearing, modification, clarification, stay of the mandate, or any other submission shall be filed or entertained in this closed docket. When was that filed? This motion or, I mean, this denial order of motion for reconsideration was June 7, 2001. But that was after Rivera? The denial of reconsideration was after Rivera. Kagan. Okay. Once more, it's the bracketed period that counts. So the time between when Rivera was, I mean, according to her argument, I'm not saying I buy it, but I'm just trying to get your response. Rivera-Sanchez comes down, the PFR is still pending, and during that interim, the argument is the Petitioner could have, but did not, call Rivera-Sanchez to the Court's attention. Well, we acknowledge that Petitioner did not call Rivera-Sanchez to the Court's attention. All right. Then her argument, Ms. Parsons' argument is that because you could have, but didn't have, that you now bound by the court's prior determination, can't revisit it. Well, it seems a rather unworkable rule, because an opinion gets filed, when is a detained pro se alien going to have access to this opinion? So, you know, in theory, that might sound like a good argument, but how is that really going to work when you have somebody that's detained, he's not a lawyer? I just don't see how he's going to, within those 3-month time periods, whether that would say, you know, this cuts off his right to raise a real issue that's affected by an in-bank decision and change in law. Heck, we get 28-J letters from real lawyers that are calling to our attention cases that have been sitting around for years, so I take your point. Thank you, Your Honor. Now, I just want to add one thing about the statute, because I don't think the statute will even get there to the statute, the 1252d2, because that talks about the validity of the removal order, and I view that as sort of a claim preclusion thing where the whole removal itself has been determined, and that's not what happens, so that doesn't apply. The statute does have an exception for grounds that couldn't have been presented at the time. We've already talked about that a little bit, but that's the same reason that issue preclusion in law of the case don't apply because of the change in law. Okay. Regarding the government's arguments on the record as to distinguishing Navidad Marcos, I think Almasan-Pesera, it's the same complaint. Almasan-Pesera tells us that complaint is not as clear as the government contends it is in this complaint. And Taylor's modified categorical approach is a rigorous standard. The documents have to establish unequivocally and clearly what facts my client admitted in his plea deal with the government, and these documents simply do that do not do that. So on a final note, I want to point out the fact that the appropriate relief here, because my client hasn't been the government hasn't carried its burden as far as removability in the first instance, and the government hasn't contended that remand is appropriate, we believe the appropriate relief would bring to bring Mr. Desiree back and restore status as a lawful permanent resident. Thank you, Your Honor. Thank you, Mr. McCrae. The matter just argued, thank you, Mr. Parsons, the matter just argued will be submitted. Very good.
judges: Hug, Rymer, Fisher